BRESEWITZ *v.* ST LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered April 29, 1905.

1. CARRIER—CONNECTING ROAD—DELAY IN FURNISHING TICKET.—Where a carrier undertook to transmit an order to a connecting carrier for the delivery of a ticket to a passenger, it discharged its duty by transmitting the order with reasonable promptness, and is not responsible for the connecting carrier's delay in delivering the ticket. (Page 244.)

2. SAME—DISCOMFORTS OF SMOKING CAR—DAMAGES.—Where a passenger who has reached the age of discretion went into a smoking car under the instructions of the train porter, and was made sick by the smoke, but remained in such car without making complaint to the conductor, he will be held to have submitted voluntarily to the discomforts of the car, and cannot recover damages. (Page 245.)

Appeal from Miller Circuit Court.

JOEL D. CONWAY, Judge.

Affirmed.

### STATEMENT BY THE COURT.

This is an action brought in the circuit court of Miller County on behalf of appellant, a minor, by his father as next friend, against appellee for damages.

It is alleged in the complaint, and shown by proof, that appellant resided at Texarkana, Ark., and was a student in

school at Annapolis, Md., preparatory to entering the United States Naval Academy. After failing to pass the physical examination at the Academy, he notified his father at Texarkana of his desire to return home immediately. This was on September 8, 1898. On the same day his father applied to the local ticket agent of appellee at Texarkana, and paid to him the price of a first-class ticket from Annapolis to Texarkana, and the latter agreed to telegraph instructions for delivery of the ticket to appellant at Annapolis. The ticket agent executed and delivered to appellant's father a written receipt for the sum so paid for the ticket, reciting that the sum paid was "for one first-class ticket to be furnished to Arnold Bresewitz from Annapolis, Md., to Texarkana, Ark." The ticket was not delivered to appellant until September 12 or 13, about six o'clock in the evening, too late for him to get a train out that day, and he left Annapolis the next day. The ticket was over the Baltimore & Ohio Railroad from Annapolis to St. Louis, and thence over appellee's road to Texarkana. Appellant testified that on his arrival at St. Louis, where he changed to appellee's train in the Union Station at that place, the porter of appellee's train directed him to enter the smoking car, in which he rode from St. Louis to Texarkana; that he did not use tobacco, and was made sick from the continuous ride in the atmosphere laden with tobacco smoke and other foul odors.

Damages were claimed on account of loss of time in waiting at Annapolis for the ticket, and the physical and mental pain resulting from the enforced ride in the smoking car.

It was proved by appellee's employees, and not disputed, that, immediately upon making the agreement with appellant's father to deliver the ticket to his son, the ticket agent, by telegraphic message sent to appellee's general passenger agent at St. Louis, and thence transmitted to the ticket agent of the Baltimore & Ohio Railroad Company at Annapolis, caused a ticket to be delivered to appellant. The message was received by the general passenger agent of appellee at St. Louis on September 8, and on the same day he sent the following telegraphic message to the manager of passenger traffic, at Baltimore, Md., of the Baltimore & Ohio Railroad Company, viz.: "Please

furnish Arnold S. Bresewitz, care R. L. Wernz, one first-class limited ticket, Annapolis to Texarkana, Tex., via your line B. & O. S. W. and our line. Rush delivery. Advise description of ticket. Will send prepaid order for $30.85 to cover." The message was received at 7:09 p. m. on September 8, and at 9 a. m. the next day a message was sent by the last-named official to the local agent of the latter company at Annapolis, directing him to deliver the ticket to appellant. On the trial the court gave all the instructions asked by each party..

A verdict was returned by the jury in favor of the defendant, judgment was entered accordingly, and the plaintiff appealed from the decision of the court overruling his motion for a new trial.

*Oscar D. Scott,* for appellant.

It was the duty of appellant to obey the instructions of the train porter. 55 Ill. 183; 70 N. Y. 587; 36 Wis. 450.

*B. S. Johnson* and *J. E. Williams,* for appellee.

Instructions are supposed to be based upon the facts and contentions of either party. 31 Ark. 699; 14 Ark. 530; 37 Ark. 580; 52 Ark. 45; 37 Ark. 238. Under the facts appellant is not entitled to recover. 53 Ark. 18, 208; 55 Ark. 376; 57 Ark. 264; 54 Ark. 166. Appellee was guilty of no negligence. 50 N. E. 747; 59 Ark. 180; 34 Ark. 613. The court's charge declared the whole law applicable. 38 Ark. 358; 56 Ark. 279; 8 Am. & Eng. Enc. Law, 605. Appellant should have asked for other instructions if he wanted them. 71 Ark. 317; 66 Ark. 46.

McCULLOCH, J., (after stating the facts.) Appellant claims that appellee fell short in its duty to him in two respects, and is liable in damages therefor, viz: In failing to cause the ticket to be delivered to him at Annapolis in due season, and in directing him to the wrong car at St. Louis.

The first question was submitted to the jury by the court upon instructions that if appellee's agents, with reasonable promptness, transmitted the order to the Baltimore & Ohio Rail-

road Company for delivery of the ticket to appellant, that was sufficient compliance with its contract, and that appellee was not responsible for the failure of the latter company to promptly deliver the ticket. We think that instruction was correct. Conceding that it was within the scope of the authority of appellee's local ticket agent at Texarkana to execute the contract in question, it was, in effect, only an agreement to transmit the order for the ticket to the initial carrier. It did not amount to an undertaking that the seller of the ticket would deliver it to appellant. It is not contended that appellee assumed to carry passengers from Annapolis to Texarkana. The ticket was to be furnished by another carrier, over whose line appellant was to travel to St. Louis, where appellee's line terminated; and, under the agreement, the first carrier cannot be treated as the agent of appellee for the purpose of delivering the ticket. All that the parties could have had in contemplation at the time of the agreement was that appellee's agent should transmit to the initial carrier at Annapolis instructions to deliver the ticket to appellant. This they did with reasonable promptness, and appellee cannot be held responsible for delay of the other carrier in delivering the ticket after receipt of the instructions.

Appellant testifies as follows: "When I arrived at St. Louis, preparatory to departing south for this place, I went through the gate, and tried to get on the chair car next to the sleeper, and the porter said, 'Go to the forward car, next to the baggage car.' The porter saw my ticket. I obeyed orders, and went to the smoker, the one next to the baggage car, the one he directed me to, and rode in it to Texarkana. At that time I did not use tobacco. The effect of being in a place where it was used was sickening, made me sick at the stomach. It was in obedience to orders that I went there and rode to Texarkana in it. There was smoking in there all the way. * * * I did not say anything to the conductor or brakeman about wanting to go into the other car, and made no complaint. I did not get off the train at any point." According to his own statement, he voluntarily submitted to the discomforts of the smoking car without objection or complaint, and cannot, therefore, claim damages therefor. He was not justified in accepting the direction given him by the train porter at the station to the car which

he should enter as a command to remain therein throughout his journey. The train was in charge of the conductor; and when appellant found that the car to which he had been assigned by the porter was uncomfortable, and not such accommodation as he was entitled to on his ticket, he should have appealed to the conductor for more comfortable quarters. Failing to do so, he is deemed to have voluntarily accepted the place assigned him with its discomforts. He had reached the age of discretion, and cannot be allowed to claim damages on account of a situation caused by a mistake of the porter which he accepted and gave the railroad company, through its proper official in charge of the train, no opportunity to correct.

Judgment affirmed.